## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IRMA PITA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08 C 312 |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY,  District Judge:

Irma Pita has sued Target Corporation, asserting a claim of negligence in connection with a slip and fall at a Target store.  Target has moved for summary judgment.  For the reasons stated below, the Court grants the motion.

### Facts

Because Target has moved for summary judgment, the Court views the facts in the light most favorable to Pita and draws reasonable inferences in her favor.  *See, e.g.*, *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Irma Pita went to the Target store located in Broadview, Illinois on June 21, 2006 between 8:00 and 9:00 p.m.  After purchasing some produce, she walked across the main grocery aisle toward the cosmetics aisle.  Pita fell to the ground.  Upon falling, she noticed that there was a colorless, odorless liquid on the floor and that her clothes were wet.  Several employees came to her aid and called an ambulance for her.

1

Before Pita's fall, Tracy Kawicz was also shopping in the same area. Kawicz noticed a puddle of colorless liquid in the main aisle. She also saw Pita in the main aisle at that time. Kawicz steered clear of the liquid. She did not say anything to Pita about the liquid because she assumed that Pita had seen it. Kawicz then walked through some of the pharmacy aisles adjacent to the main aisle. About three minutes after first seeing Pita and the puddle in the main aisle, Kawicz saw Pita step on the liquid and fall to the ground.

Target's policy requires that employees watch out for spills and other dangerous conditions. According to the policy, if an employee discovers a spill, she must stay on the spot and call for help on her walkie-talkie. The Broadview Target store had cleaning stations throughout the store stocked with cleaning supplies.

Marta Buczynski, a Target employee, was on duty the evening of June 21, 2006. She was assigned to work the pharmacy section of store between 5:00 p.m. and 11:00 p.m. One of her duties is to periodically check the aisles to make sure the displays are neat and that there are no dangerous conditions like spills. Buczynski testified at her deposition that she typically checks the aisles in this fashion approximately every ten minutes. She testified that she checked the aisles about every ten minutes on June 21, 2006. She did not notice any liquid on the floor on that night. Buczynski is currently required to take a thirty-minute lunch break at some point during her shift, but she was not sure whether she was required to take such a break in June 2006. In any event, Buczynski testified that she was certain that she was not on a lunch break immediately prior to Pita's fall.

Gabriel Guzman, another Target employee, testified at his deposition that he was also checking the main grocery aisle on the evening of June 21, 2006. He testified that he walked past that aisle about five to ten minutes before Pita fell. Guzman did not observe any liquid on the floor prior to Pita's fall.

A bathroom is located near the main aisle where Pita fell. That bathroom is typically cleaned overnight only. If the bathroom is particularly dirty, however, employees occasionally clean it during business hours. Cleaning equipment, including mops and buckets, is stored in maintenance rooms at the front and back of the store. Matt Liska, a Target Protection Specialist, did not know whether the bathroom had been mopped on June 21, 2001, but he testified that the bathroom is typically just used by employees in the pharmacy and is "typically just cleaned overnight because it's very rarely used." Liska Dep. at 82.

**Discussion**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

To recover on a negligence claim under Illinois law, the plaintiff must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately caused by the breach. *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063, 753 N.E.2d 1007, 1010 (2001) (citing *Miller v. Nat'l Assoc. Of Realtors*, 271 Ill. App. 3d 653, 656, 648 N.E.2d 98, 100 (1994)). "If the plaintiff cannot establish an element of her cause of action, summary judgment for the defendant is proper." *Id.* (citing *Pyne v. Witmer*, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1307 (1989)).

Both parties agree that Pita was Target's business invitee and that Target owed her a duty of reasonable care. *See Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 437, 856 N.E.2d 1048, 1057-58 (2006). Illinois law imposes upon businesses a duty to maintain their premises in a reasonably safe condition to avoid injuring their invitees. *Reid v. Kohl's Dept. Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (citing Illinois cases). "A business owner breaches its duty to an invitee who slips on a foreign substance if '(1) the substance was there by the negligence of the proprietor or (2) [its] servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e. the proprietor had constructive notice of the substance.'" *Pavlik*, 323 Ill. App. 3d at 1063, 753 N.E.2d at 1010 (citing *Haynes v. Bailey*, 80 Ill. App. 3d 1027, 1030, 400 N.E.2d 544, 546 (1980)).

Target contends that there is no evidence that would support a reasonable inference that it breached its duty of care. Pita contends that the evidence would allow

4

a reasonable jury to infer that an employee negligently caused the spill or that Target had constructive notice of the spill.

## A.      Negligent causation by Target employee

Pita contends that there are genuine issues of material fact that preclude summary judgment regarding her contention that a Target employee negligently caused the spill.  Specifically, Pita contends that the liquid could have come from a bucket used to clean the bathroom near the main grocery aisle.  Pita asserts that one can draw a reasonable inference of employee negligence because it was not raining that day and there were no reports of leaks from the ceiling above the area where she fell.  Pita has not, however, produced evidence that would indicate that the bathroom was cleaned during business hours that day.  On the contrary, none of the witnesses recalls the bathroom being cleaned that day.  Furthermore, Liska testified in his deposition that the bathroom is rarely cleaned during business hours.  He also testified that the bathroom in question was rarely used, and that it was used primarily by pharmacy employees, not customers.  None of the deposed witnesses testified that the bathroom was cleaned that day or that they observed an employee with a mop and bucket in the area.

Pita's theory that the spill could have been caused by a Target employee is entirely speculative and is unsupported by the evidence or reasonable inferences that could be drawn from the evidence.  It requires an assumption that the bathroom near the pharmacy section was especially dirty that day and that an unknown employee took the mop and bucket out of the supply room and down the main grocery aisle without anyone knowing it and spilled water on the floor.  There is no evidence in the record from which a jury reasonably could draw such an inference.

**B.     Constructive notice**

A business owner's liability based on constructive notice of a foreign substance

depends upon the length of time that substance has been present.  *Torrez v. TGI*

*Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007) (citing *Tomczak v. Planetshpere, Inc.*,

315 Ill. App. 3d 1033, 1039, 735 N.E.2d 662, 667 (2007).  In Illinois, there is no bright-

line rule concerning how much time is sufficient to permit a finding of constructive

notice.  *Peterson v. Wal-Mart Stores, Inc.* 241 F.3d 603, 605 (7th Cir. 2001) (citing

*Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d 1000, 1002, 403 N.E.2d 678, 680

(1980)).

Pita contends that *Peterson v. Wal-Mart*, in which the Seventh Circuit reversed a

grant of summary judgment, presented facts similar to this case.  In that case, the

plaintiff testified that he had been in an aisle for about ten minutes before he slipped on

lotion that appeared to come from a broken product.  *Peterson*, 241 F.3d at 604.  The

defendant presented evidence that employees patrol each aisle for spills constantly and

two employees testified that they walked down the aisle just minutes earlier and had

seen no sign of spillage.  *Id.*  Because "there was no basis in the record for estimating

how much earlier the spill might have occurred," the court concluded that ten minutes

was the outside time limit for the constructive notice inquiry.  *Id.*  The lower court

granted summary judgment, holding that under Illinois law "ten minutes are too few to

give a store owner constructive notice of a hidden danger on the premises."  *Id.*  It relied

on *Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d at 1002, 403 N.E.2d at 680, for this

rule.  The Seventh Circuit reversed, concluding that *Hresil* did not establish a *per se*

rule that ten minutes was insufficient to establish constructive notice. *Id.* at 605.

Indeed, the court stated that "it is certainly arguable that ten minutes is too short a time

to establish a store owner's negligence in failing to have noticed and corrected a

dangerous condition caused by a customer." *Id.* (citations omitted). The court

determined, however, that in light of the plaintiff's testimony that he had been standing

in that aisle for ten minutes before he fell and the defendant's evidence that employees

constantly patrol the store for spills, a jury reasonably could conclude that the

employees were careless in not noticing the spilled lotion. *Id.*

Target contends that *Reid v. Kohl's* controls. In that case, the plaintiff was

walking from one section of the store to another, when he slipped on a spilled

milkshake. *Reid*, 545 F.3d at 480. The store manager on duty that day testified that

she had walked through that area no more than ten minutes before the fall and had not

seen the spill. *Id.* at 481. Because the plaintiff failed to offer evidence to support a

contention that the spill had been on the ground for longer than ten minutes, the court

accepted ten minutes as the outside time limit. *Id.* In affirming the district court's grant

of summary judgment, the Seventh Circuit stated that the length of time necessary to

trigger constructive notice depends on the circumstances of the particular case. *Id.* at

483. As customer traffic decreases, so does the store's duty to inspect. *Id.* In *Reid*,

the manager testified that there were very few customers in the store around the time of

the spill. *Id.* Distinguishing *Peterson* on this basis, the court concluded that "ten

minutes was not enough to give [the defendant] constructive notice of the spill." *Id.* It is

also noteworthy that unlike in *Peterson*, there was no evidence in Reid suggesting that

employees were on constant patrol, a key factor in the Seventh Circuit's decision in

*Peterson*.

Pita contends that there is sufficient evidence to support a reasonable inference that Target had constructive notice of the spill. Pita relies primarily on the deposition testimony of Tracy Kawicz, who was also shopping in the grocery section at the time Pita fell. Kawicz testified that she saw the spill on the ground and then saw Pita fall a few minutes later. Pita contends that this testimony "demonstrates the water was on the floor for a period of time long enough that she noticed it, proceeded to do some more shopping, and subsequently witnessed the Plaintiff fall." Pita Resp. at 9.

Kawicz testified, however, that only two or three minutes passed between the time she first noticed the puddle and Pita's fall. This corresponds with the testimony of both Buczynski and Guzman. Buczynski testified that she had walked down the main aisle where Pita fell at most ten minutes before the fall. Guzman testified that he walked by the aisle about five or ten minutes before the fall. Both employees testified that they saw no spill.

Pita attempts to extend the possible time interval by suggesting that Buczynski could have been on break right before the accident. Buczynski unequivocally stated, however, that she was not on a break immediately before Pita's fall. Because Pita has failed to produce evidence that would support a longer interval, ten minutes is the outside limit of the amount of time the liquid was on the ground before Pita fell.

As a result, the question is whether ten minutes is sufficient to establish constructive notice in this particular case. Pita's fall occurred between 8:00 p.m. and 9:00 p.m. on a weeknight. Pita described the volume of customers at the Target store

8

as "kind of medium," "not too many people." Ex. A at 42. She testified that while walking through the grocery section and down the main aisle before she fell, she saw only one other woman pushing a shopping cart. Kawicz similarly testified that the only people she saw in the grocery and pharmacy sections were her sister and Pita. This indicates that the store was relatively empty at the time of the accident. As a result, *Reid* dictates that Target's duty of care decreased in relation to customer traffic. As in *Reid*, ten minutes is not a sufficient amount of time to establish constructive notice because the store was experiencing light customer traffic. In addition, Target's procedures for monitoring the store for hazardous conditions is similar to the one utilized by the defendant in *Reid*. 545 F.3d at 483. The Seventh Circuit stated that the defendant's internal procedure of periodic monitoring "appropriately addressed the threat of" hazardous conditions such as spills. *Id.* The same is true in this case.

In short, this case is more like *Reid* than *Peterson*. In the circumstances presented, the presence of the liquid on the floor for no more than ten minutes is insufficient to permit a reasonable jury to find that Target had constructive notice of the spill.

## Conclusion

For the foregoing reasons, the Court grants Target's motion for summary judgment [docket no. 28]. The clerk is directed to enter judgment in favor of the defendant.

MATTHEW F. KENNELLY
Date: May 29, 2009                                    United States District Judge